UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LAURA HECKMAN, | § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 3:18-CV-00375 |
| TRANSCANADA USA SERVICES, INC., ET AL., | § § § § | |
| Defendants. | § § | |

## ORDER

This order addresses whether certain documents have been properly withheld by TransCanada USA Services, Inc. ("TC USA") on the basis of the attorney-client and work product privileges.

## BACKGROUND

Plaintiff Laura Heckman ("Heckman") has brought claims for gender and age discrimination and retaliation against Defendants TC USA, TransCanada Corporation, and TransCanada Pipelines Limited.  It is undisputed that Heckman filed a complaint of workplace discrimination against a high-ranking TC USA executive on January 24, 2018, and was terminated five days later on January 29, 2018.  Heckman claims the chronology says it all: she was terminated in retaliation for lodging the complaint.  TC USA vehemently disagrees, arguing that when Heckman made her official complaint of workplace discrimination on January 24, 2018, TC USA had already made the decision to fire her on January 29, 2018.

In this lawsuit, Heckman served TC USA with requests for production. TC USA timely responded, objecting to the production of documents protected by the attorney-client and work product privileges. TC USA put together a privilege log, identifying those documents being withheld on the basis of privilege and providing basic information about each document, including the date, author, recipient, and a brief explanation as to why the document is allegedly privileged. At my request, TC USA provided the documents for an *in camera* review.

To support its claim of privilege, TC USA also submitted two declarations. One of those declarations is from TC USA's counsel, attesting to the accuracy of the descriptions on the privilege log and identifying those individuals listed on the privilege log who are licensed attorneys. The other declaration is from Caroline Lafond ("Lafond"), TC USA's Director of Human Resources. In her declaration, Lafond testifies that TC USA has standard procedures for investigating allegations of workplace discrimination. In the usual situation, the HR Governance group, which is not comprised of lawyers, conducts an investigation to determine the appropriate course of action. That standard procedure was not, Lafond observes, followed when it came to investigating Heckman's discrimination complaint. Instead, Lafond says that the General Counsel's Internal Audit group took over the investigation, gathering the information necessary to provide legal analysis and advice concerning Heckman's complaint and planned termination.[1] TC USA also hired outside counsel to provide legal advice for the

---

[1] Heckman recently submitted supplemental briefing claiming that Lafond's description in her declaration as to the standard procedure for investigating complaints of discrimination cannot be

investigation, something the company did not ordinarily do when investigating workplace discrimination complaints. According to Lafond, "[t]he primary motivation for deviating from the normal procedures was to prepare for anticipated litigation." Dkt. 69-1 at 4. "TC USA was sensitive to the possibility of litigation resulting from Ms. Heckman's allegations should TC USA proceed with the planned termination," she added. *Id.* The LaFond declaration further states that TC USA anticipated on January 24, 2018, that litigation could occur.

## WORK PRODUCT PRIVILEGE

### A.   LEGAL STANDARD FOR WORK PRODUCT PRIVILEGE

Established by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work product doctrine is now codified in Federal Rule of Civil Procedure 26. Under Rule 26, a party ordinarily may not discover "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" absent a showing of substantial need and inability to obtain their substantial equivalent without undue hardship. FED. R. CIV. P. 26(b)(3)(A). "The purpose of the work product privilege is to further the interests of clients and the cause of

---

trusted because her deposition "testimony conflicted with her declaration and creates concerns regarding her veracity and reliability as a witness." Dkt. 73 at 2. I am not persuaded. Although at her deposition Lafond did temporarily confuse Internal Audit's role in the *intake* of discrimination complaints with the actual *investigation* of such complaints, she apologized for the confusion and testified that she is "very clear on who does investigations on discrimination or harassment." Dkt. 74-1 at 4. Lafond proceeded to testify at the deposition that TC USA deviated in Heckman's case from its ordinary practice by utilizing the Internal Audit group, rather than the HR Governance group, to handle the investigation.

3

justice by shielding the lawyer's mental processes from his adversary." *In re Grand Jury Subpoena*, 220 F.3d 406, 408 (5th Cir. 2000) (internal quotation marks and citation omitted).

The burden of demonstrating the applicability of the work product privilege rests on the party seeking its protection. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). The Fifth Circuit has described the standard for determining whether a document has been prepared in anticipation of litigation:

> It is admittedly difficult to reduce to a neat general formula the relationship between preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the primary motivating purpose behind the creation of the document was to aid in the possible future litigation.

*United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981) (citations omitted). "Among the factors relevant to determining the primary motivation for creating a document are 'the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance.'" *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004) (quoting *Elec. Data Sys. Corp. v. Steingraber*, No. 4:01-CV-225, 2003 WL 21653414, at *5 (E.D. Tex. July 9, 2003)). "If the document would have been created without regard to whether litigation was expected, it was made in the ordinary course of business and is not protected by the work product doctrine." *Moser as Trustee of Tr. Under Amended Joint Plan of Liquidation of Tango Transport, LLC v. Navistar Int'l Corp.*, No. 98-C-3952, 2019 WL

236722, at *3 (E.D. Tex. May 26, 2019). Put another way, "[t]he work product doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client, and the doctrine excludes materials assembled in the ordinary course of business." *United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 1031154, at *3 (E.D. Tex. Mar. 15, 2016) (internal quotation marks, citation, and brackets omitted).

**B.    APPLICABILITY OF WORK PRODUCT PRIVILEGE**

TC USA's privilege log identifies roughly 50 documents it contends were created at the direction of TC USA's legal counsel in anticipation of litigation. These documents all relate to the investigation conducted by TC USA's legal counsel after it reasonably believed that litigation arising from the planned termination of Heckman's employment was likely.

Heckman asks me to order the production of these documents on the grounds that these investigatory documents would have been created regardless of whether the prospect of litigation existed. TC USA readily acknowledges that had the documents at issue been created in the ordinary course of business rather than in anticipation of litigation, the work product privilege would not apply. *See Ambrose-Frazier v. Herzog Inc.*, No. CV-15-1324, 2016 WL 890406, at *5 (E.D. La. Mar. 9, 2016) (material created as part of a routine investigation conducted in the ordinary course of business without legal counsel's involvement is not privileged). But that is not the situation here. The investigation initiated by TC USA after receiving Heckman's discrimination complaint was far from the type of investigation conducted in the normal course of business. In normal practice, TC USA's HR Governance group investigates when an employee

presents a complaint of harassment or discrimination. In this case, however, the HR Governance group did not conduct the investigation into the alleged discrimination. Instead, TC USA's general counsel herself directed the investigation due to the heightened likelihood of litigation given that TC USA was slated to terminate Heckman a few days after she submitted her complaint of discrimination. As TC USA correctly observes: "[I]f a company deviates from its ordinary practice and engages counsel to direct an investigation, particularly where there is a background of circumstances that highlight the risk of litigation, the investigative materials are protected by the work product doctrine." Dkt. 70 at 3 (citing *In re Stone Energy Corp.*, No. 05-2088, 2008 WL 3836657, at *4 (W.D. La. Aug. 14, 2008), *rev'd on other grounds*, No. 05-2088, 2008 WL 4868086 (W.D. La. Nov. 4, 2008)). Because TC USA's counsel-directed investigation was neither routine nor ordinary, I find that the documents at issue were prepared in anticipation of litigation and are entitled to work product protection.

## ATTORNEY-CLIENT PRIVILEGE

### A.     LEGAL STANDARD FOR ATTORNEY CLIENT PRIVILEGE

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). Its purpose is to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). In federal question cases such this one, federal common law determines the scope of the attorney-client privilege. *See In re EEOC*, 207 Fed. App'x 426, 431 (5th Cir. 2006).

The Fifth Circuit defines the elements of the federal common-law attorney-client privilege as follows: (1) "a confidential communication;" (2) between a client or client representative and "a lawyer or his subordinate;" (3) "for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (emphasis omitted).

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co.*, 449 U.S. at 395. "[C]ommunications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758 (D.C. Cir. 2014).

A party asserting the attorney-client privilege bears the burden of demonstrating its applicability. *See Robinson*, 121 F.3d at 974. "A general allegation of privilege is insufficient to meet this burden." *Navigant Consulting*, 220 F.R.D. at 473. Instead, "[t]he proponent must provide sufficient facts by way of detailed affidavits or other evidence to enable the court to determine whether the privilege exists." *Id.*

**B.     APPLICABILITY OF ATTORNEY CLIENT PRIVILEGE**

For the purposes of this order, I will discuss the applicability of the attorney-client privilege to the dozen documents for which only the attorney-client privilege has been asserted to shield production. There are numerous documents on the privilege log for which TC USA asserts both the attorney-client privilege and work product privilege. Because, as discussed above, I have concluded that the work product privilege is valid,

7

there is no need to determine whether the attorney-client privilege also applies to those same documents.

I have had an opportunity to carefully review and analyze the documents for which TC USA asserts the attorney-client privilege. For the most part, the documents on the privilege log fall under the attorney-client privilege: they are confidential communications made to a lawyer or his subordinate for the primary purpose of securing either a legal opinion or legal services. There are, however, two exceptions.

The first page of Priv_00011 is an email from a TC USA employee to TC USA's outside counsel which is covered by the attorney-client privilege. The attachment to the email, however, contains a single page of typed notes detailing a phone conversation with Heckman on January 24, 2018. The notes were apparently prepared by Wendy Hanrahan ("Hanrahan"), TC USA's Executive Vice-President, Corporate Services. Hanrahan is not a lawyer and her notes are, therefore, not protected by the attorney-client privilege. The fact that the notes were eventually forwarded to TC USA's outside counsel does not magically transform them into a privileged communication that can be withheld from production. *See Robinson*, 121 F.3d at 975 ("[D]ocuments do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer."). The typed notes attached to Priv_00011 must, therefore, be produced.

Priv_00028 is described on the privilege log as an "[e]mail to counsel requesting legal advice and regarding the investigation into Laura Heckman's allegations." Dkt. 69-2 at 9. In reality, the document is simply a notice setting up a telepresence meeting. It contains no substantive discussion on any topic. "The fact that a client is meeting with an

attorney for the purposes of obtaining legal advice, and the general subject matter of such meeting, is not necessarily privileged." *Meade v. General Motors, LLC*, 250 F. Supp. 3d 1387, 1391 (N.D. Ga. 2017). *See also Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir. 1989) ("fact and date of consultation" with attorney was not privileged); *In re Grand Jury Proceedings*, 689 F.2d 1351, 1352–53 (11th Cir. 1982) (holding that a government subpoena asking an attorney to produce documents that would reflect date, place, and time of meetings with the client is not covered by the attorney-client privilege). Accordingly, this document is not encompassed by the attorney-client privilege and needs to be produced.

## CONCLUSION

In sum, TC USA has satisfied its burden to prove that those documents identified on the privilege log as "work product" are, indeed, covered by the work product privilege. Additionally, with the exception of the typed notes at Priv_00011 and the meeting notice at Priv_00028, the attorney-client privilege protects from disclosure those documents identified on the privilege log as covered by that privilege alone.

SIGNED and ENTERED this 13th day of January, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE