United States District Court
Southern District of Texas
**ENTERED**
March 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LAURA HECKMAN, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18-CV-00375 |
| | § | |
| TRANSCANADA USA SERVICES, | § | |
| INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion to Dismiss filed by Defendants TransCanada Corporation ("TC Corp") and TransCanada Pipelines Limited ("TCPL"). *See* Dkt. 87. Having considered the briefing, the record, and the relevant law, I recommend that the motion be **DENIED**.

## BACKGROUND

TransCanada USA Services, Inc. ("TC USA") is a Delaware corporation with its principal place of business in Houston, Texas. TC USA hired Laura Heckman ("Heckman") in November 2014 to serve as Vice-President of Business Development in the United States. After roughly two years in that position, Heckman became TC USA's Vice-President of Midstream. According to Heckman, she excelled in both posts, racking up a number of significant accomplishments.

In April 2017, TC USA appointed Stanley G. Chapman, III ("Chapman") as Executive Vice-President and President of United States natural gas pipelines. In

that role, Chapman supervised Heckman directly. It did not go well. Heckman claims that Chapman displayed inappropriate and discriminatory conduct towards her due to her age and sex. It bothered her so much, Heckman says, that she raised concerns about Chapman's behavior with TC USA's human resources department. On February 12, 2018, TC USA terminated Heckman's employment. Heckman claims that TC USA fired her for reporting Chapman's discriminatory behavior.

In November 2018, Heckman filed this lawsuit under state and federal law, alleging age and sex discrimination and retaliation against TC USA, TC Corp, and Chapman. Heckman also seeks a declaratory judgment that TC USA and TC Corp are withholding funds to which she is lawfully entitled. Heckman subsequently amended her complaint to add TCPL as an additional defendant. TC Corp is a parent holding company for TCPL. One of TCPL's subsidiaries is TC USA. TC Corp and TCPL are both incorporated under Canadian law and headquartered in Calgary, Alberta, Canada. The Second Amended Complaint alleges:

> TC USA, TC Corp, and/or TCPL knew of Mr. Chapman's dislike of women in executive roles, and yet, they put him in a position to discriminate and retaliate against Ms. Heckman based on her gender and age. TC USA, TC Corp, and/or TCPL then retaliated against Ms. Heckman for daring to speak up about Mr. Chapman's wrongful conduct.

Dkt. 30 at 11. The District Court dismissed Heckman's claims against Chapman under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

TC Corp and TCPL have jointly filed a motion to dismiss. TC Corp and TCPL advance two arguments in favor of their dismissal from this suit. First, they argue

that there is no basis for this Court to exercise personal jurisdiction over them. Second, they insist that Heckman's claims against TC Corp and TCPL must be dismissed because she failed to exhaust her administrative remedies. More specifically, TC Corp and TCPL claim that Heckman failed to name either TC Corp or TCPL in her EEOC charge, and has pled no facts sufficient to overcome that failure.

## PERSONAL JURISDICTION

### A.   LEGAL STANDARD

A district court must dismiss a case when it lacks personal jurisdiction over the defendants. *See* FED. R. CIV. P. 12(b)(2). As the Fifth Circuit has noted:

> As the party seeking to invoke the power of the court, [Plaintiff] bears the burden of establishing jurisdiction but is required to present only *prima facie* evidence. In determining whether a *prima facie* case exists, this Court must accept as true [Plaintiff's] uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation.

*Pervasive Software, Inc. v. Lexware GmbH & Co, KG*, 688 F.3d 214, 219–20 (5th Cir. 2012) (cleaned up).

Generally, personal jurisdiction requires both a statutory and a constitutional analysis, *see Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 347 (5th Cir. 2019), but because "the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019). To establish this Court's jurisdiction over Defendants,

Heckman must show that Defendants had minimum contacts with Texas—meaning that [Defendants] purposely availed [themselves] of Texas's benefits and protections—and that exercising jurisdiction will not offend traditional notions of fair play and substantial justice." *Conn Appliances*, 936 F.3d at 347 (cleaned up).

The Supreme Court of the United States has recognized two kinds of personal jurisdiction: general jurisdiction and specific jurisdiction. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1779–80 (2017). General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific jurisdiction, on the other hand, demands a connection between the incident in question and the forum state. *See Walden v. Fiore*, 571 U.S. 277, 283–84 (2014).

## B.   ANALYSIS

### 1.   General Jurisdiction

In *Daimler AG v. Bauman*, the Supreme Court held that a state has general jurisdiction over a corporation if "the corporation is fairly regarded as at home" in the forum state. 571 U.S. 117, 137 (2014) (quotation omitted). The Supreme Court explained that the general jurisdiction inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are *so* "continuous and systematic" as to render it essentially at home in the forum State.'"

4

*Id.* at 138–39 (emphasis added) (brackets omitted) (quoting *Goodyear* 564 U.S. at 919).

A corporation's "home" for general jurisdiction purposes generally falls into two paradigmatic places: (1) the state of incorporation, and (2) the state where the corporation has its principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). A corporation might carry out operations in multiple states, but "it cannot be deemed at home in all of them because unpredictability would follow and jurisdictional rules are meant to promote greater predictability." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337 (5th Cir. 2020) (quoting *Daimler*, 571 U.S. at 137, 139 n. 20). As the Fifth Circuit has recognized on several occasions, "it has become 'incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.'" *Id.* at 336 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). Indeed, the Supreme Court has found a sufficient basis to exercise general jurisdiction over a corporation outside of its place of incorporation or principal place of business only once since the advent of the modern personal jurisdiction doctrine. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952). And that case, decided almost 70 years ago, presented an incredibly unique fact pattern.

In *Perkins*, the high court held that Ohio had general jurisdiction over the defendant, a Philippine mining corporation, because it had ceased activity in the Philippines during World War II, conducted all its business in Ohio, and the company president supervised all company activities from an office in Ohio where

all company files were kept. *See id.* at 447–49. Suffice it to say that exceptional circumstances must exist to support general jurisdiction in a place other than the state of incorporation or the state where the entity has its principal place of business.

TC Corp and TCPL are incorporated under the Canada Business Corporation Act and headquartered in Calgary, Alberta, Canada. Heckman has identified no circumstances that would make this an "exceptional case" for general jurisdiction to exist in the great State of Texas. Recognizing this, Heckman bases her general jurisdiction argument on an alter ego theory. In a nutshell, Heckman contends that TC USA's contacts with the State of Texas should be imputed to TC Corp and TCPL because TC Corp and TCPL "exercised overwhelming dominion and control over TC USA's activities." Dkt. 94 at 10. I am not persuaded.

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there." *Hargrave v. Fiberboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983). But "in some circumstances[,] a close relationship between a parent and its subsidiary may justify a finding that the parent 'does business' in a jurisdiction through the local activities of its subsidiaries." *Id.* This usually means the parent corporation exerts so much control over the subsidiary "that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction." *Id. See also Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 F. App'x 325, 332 (5th Cir. 2014) ("The relationship between the subsidiary and

parent must be such that they are in reality the same corporation. Typically, this requires the corporate separation to be a fiction."); *Hargrave*, 710 F.2d at 1160 ("[S]o long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."). Courts are generally "loathe to merge the separate legal identities of parent and subsidiary unless the latter exists as a mere tool or 'front' for the parent, or the corporate fiction is utilized to achieve an inequitable result, or to conceal fraud or illegality." *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983).

The Fifth Circuit has identified "a laundry list of factors" to be used in determining whether a parent's control will allow alter ego jurisdiction. *See United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691–92 (5th Cir. 1985). The so-called "*Jon-T* factors" include whether:

(1)    the parent and the subsidiary have common stock ownership;

(2)    the parent and the subsidiary have common directors or officers;

(3)    the parent and the subsidiary have common business departments;

(4)    the parent and the subsidiary file consolidated financial statements and tax returns;

(5)    the parent finances the subsidiary;

(6)    the parent caused the incorporation of the subsidiary;

(7)    the subsidiary operates with grossly inadequate capital;

(8)    the parent pays the salaries and other expenses of the subsidiary;

(9)    the subsidiary receives no business except that given to it by the parent;

(10)    the parent uses the subsidiary's property as its own;

(11)   the daily operations of the two corporations are not kept separate; and

(12)   the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings.

*Id.* Resolution of alter ego issues must be based on a consideration of "the totality of the circumstances." *Id.* at 694.

Squarely addressing the *Jon-T* factors, TC Corp and TCPL present declarations from the corporate secretaries for TC USA, TC Corp, and TCPL. Those declarations convincingly demonstrate that there is no basis for piercing the corporate veil for jurisdictional purposes:

- TC USA observes all corporate formalities, including keeping separate books and records and holding distinct board and stockholder meetings from TC Corp and TCPL;

- TC Corp and TCPL do not finance TC USA;

- TCPL and TC Corp do not use TC USA property as their own;

- TC Corp and TCPL do not pay TC USA's salaries and expenses;

- TC USA does not file a consolidated tax return with either TC Corp or TCPL;

- TC USA is adequately capitalized; and

- TC USA maintains four committees appointed by the Board of TC USA to oversee and administer TC USA's employee benefits and other programs, all four of which are independent from TCPL and TC Corp.

*See* Dkts. 87-2, 87-3, 87-9, 100-1.

Curiously, Heckman ignores the *Jon-T* factors as a whole, focusing instead on four factors Texas courts consider when determining whether a subsidiary corporation's contacts can be imputed to its parent corporation: "the amount of

the subsidiary's stock owned by the parent corporation, the existence of separate headquarters, the observance of corporate formalities, and the degree of the parent's control over the general policy and administration of the subsidiary." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175 (Tex. 2007).

Heckman first claims that TC USA is a wholly owned subsidiary of TC Corp. Even if true, "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave*, 710 F.2d at 1160.

Second, Heckman argues that all three defendants constitute a single business entity because each is headquartered in the same place: Calgary, Alberta, Canada. Putting aside the fact that TC USA's principal place of business is actually in Houston, Texas, Heckman's claim actually defeats her personal jurisdiction argument. Her entire general jurisdiction theory is based on the premise that TC USA's contacts with Texas can be attributed to TC Corp and TCPL. If TC USA's principal place of business is outside of Texas, general jurisdiction does not exist over TC USA in Texas. Following this logic, general jurisdiction would also not exist over TC Corp and TCPL under an alter ego theory.

Third, although Heckman claims that TC USA failed to observe corporate formalities, she has failed to offer compelling proof to substantiate this serious charge. Based on the record before me, I am unwilling to conclude TC USA failed to observe proper corporate formalities.

Fourth, Heckman broadly asserts that TC Corp and TCPL "exert extensive dominion and control over TC USA's policies and administration." Dkt. 94 at 11. But there is no evidence to support this allegation. And there is nothing atypical about Heckman's assertion that four TC USA employees reported to TC Corp and TCPL managers and officers. *See Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997) ("Common management and ownership are ordinary aspects of a parent-subsidiary relationship.").

In sum, Heckman has failed to present facts sufficient to pierce the corporate veil. TC Corp and TCPL are not subject to general personal jurisdiction in Texas on the basis of TC USA's alleged contacts in the Lone Star State.

### 2. Specific Jurisdiction

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (quotation omitted). For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (quotation omitted). Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The Fifth Circuit uses a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting

activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted). "Specific jurisdiction should be determined on a case-by-case basis under the facts of each individual case." *Zoch v. Magna Seating (Ger.) GmbH*, 810 F. App'x 285, 293 (5th Cir. 2020).

For purposes of the minimum contacts analysis, Heckman must show that TC Corp's and TCPL's contacts with Texas were sufficiently related to either of her two alleged injuries: (1) the withholding of payments under TC Corp's Executive Share Unit ("ESU") Plan; or (2) her termination. Any contacts with Texas unrelated to the alleged wrongful termination or withholding of ESU Plan compensation are irrelevant to the personal jurisdiction analysis.

With respect to the ESU Plan, Heckman claims that specific jurisdiction exists over TC Corp and TCPL because those companies are directly involved in withholding payments to which she, a Texas resident, is owed. To put this claim into context, a little background about the ESU Plan is needed. TC Corp created the ESU Plan for its subsidiaries, including TC USA, to offer certain employee benefits. TC Corp does not fund the plan; instead, TC Corp's subsidiaries fully and independently fund the ESU Plan for their respective employees. As such, TC USA funds the ESU Plan for the benefit of its own employees.

TC Corp and TCPL correctly point out that "courts routinely reject the argument that a parent company's administration of a benefits package covering

employees of its subsidiaries is cause to hale the parent into any foreign jurisdiction in which its subsidiaries might have employees." Dkt. 100 at 23 (citing *Dalton v. R & W Marine, Inc.*, 897 F.3d 1359, 1363 (5th Cir. 1990)). But Heckman's claim here isn't just that personal jurisdiction exists over TC Corp and TCPL because TC Corp administered a benefits plan for its corporate affiliates. Instead, Heckman argues that TC Corp and TCPL were directly involved in the decision to withhold ESU Plan payments to her in particular. In support of this allegation, Heckman directs me to deposition testimony from Gillian Eiriksson, TCPL's Director of Total Rewards and Human Resources Governance. At her deposition, Eiriksson testified that a group of TCPL employees were responsible for determining whether to process payments to Heckman in accordance with the ESU Plan text. Eiriksson also indicated that a group of TCPL employees, TC Corp's Board of Directors, and TC Corp's Human Resources Committee "were withholding the payment on the 2016 grant" to Heckman. Dkt. 96-16 at 43. Finally, Eiriksson acknowledged that she was not personally aware if TC USA was involved in withholding payments to Heckman under the ESU Plan. Opposing Heckman's assertion of specific jurisdiction, TC Corp and TCPL have introduced evidence of their own suggesting that TC Corp and TCPL were not involved in the decision to withhold benefits to Heckman. *See* Dkt. 87-4 at 3 ("Nor is TC Corp responsible for administering any payments under the ESU Plan."); Dkt. 87-9 at 3 ("The TC USA Board and [four TC USA] committees have sole authority over [TC USA's employee benefits and other programs], with complete independence from TC Corp.").

In simple terms, we have a classic case of conflicting evidence. At this juncture, it would be inappropriate for me to weigh the evidence and make credibility determinations. *See DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1271 (5th Cir. 1983) (In determining whether the prima facie case of specific jurisdiction has been made, the district court does not act as a fact finder; rather, it accepts properly supported proffers of evidence by the plaintiff as true and makes its ruling as a matter of law.). For the purposes of a motion to dismiss for lack of personal jurisdiction, all conflicts between facts "must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quotation omitted). *See also Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (holding that failure to construe factual conflicts contesting personal jurisdiction in favor of plaintiff constitutes reversible error). Mindful of Heckman's low evidentiary burden, and resolving any factual conflicts in her favor, as I must, I conclude that Heckman has adduced evidence sufficient for a prima facie case of personal jurisdiction over TC Corp and TCPL.[1]

Although not necessary, I also find that specific jurisdiction exists over TC Corp and TCPL as a result of their alleged involvement in Heckman's termination. Once again, it is not my job to scrub the parties' evidentiary support and determine

---

[1] To be clear, I am not making a final determination at this time that TC Corp and TCPL had anything to do with withholding ESU Plan benefits from Heckman. I am simply concluding that Heckman has satisfied her burden to present a prima facie case that personal jurisdiction over TC Corp and TCPL is proper.

which side I find to be more trustworthy and credible at this juncture of the case. Instead, I am required by the Fifth Circuit to weigh all contested facts in favor of personal jurisdiction. *See Bullion*, 895 F.2d at 217. TC Corp and TCPL argue that Chapman, a TC USA employee, made the decision by himself to terminate Heckman. Because TC Corp and TCPL had nothing to do with Heckman's termination, the argument goes, they cannot be subject to specific jurisdiction in Texas. Hold on a second, says Heckman, directing me to evidence in the record that suggests that the Executive Leadership Team—a group comprised of TC Corp officers and TCPL employees—lacked confidence in Heckman's job performance, and supported her termination. In Heckman's view, this evidence indicates that Chapman did not make the decision to terminate Heckman alone. Additionally, Heckman makes much of the fact that the general counsel of TC Corp and TCPL supposedly investigated Heckman's allegations of discrimination and allowed Heckman's termination to proceed. To Heckman, this constitutes clear and unmistakable proof that the general counsel and others at TC Corp and TCPL had the final authority to terminate Heckman and could have vetoed Chapman's effort to end her employment. Once again, I am caught in a bit of a bind. From reviewing the personal jurisdiction record, I certainly do not believe that Heckman has established beyond a shadow of a doubt that TC Corp and TCPL were involved in the decision to terminate her position at TC USA. In the same breath, I am obligated to draw all factual inferences in Heckman's favor. In this light, I believe

Heckman has met her burden to establish a prima facie case of specific jurisdiction over TC Corp and TCPL in connection with her termination allegations.

Because Heckman has shown that minimum contacts exist and that the causes of action arise out of those contacts, the burden shifts to TC Corp and TCPL to show that the exercise of jurisdiction would be unreasonable. *See Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473–74 (5th Cir. 2006). If a district court finds the existence of minimum contacts purposefully aimed at the forum state, "only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice." *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 820 (S.D. Tex. 2001) (cleaned up). Indeed, once minimum contacts are established, TC Corp and TCPL "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In conducting the fairness inquiry, the Fifth Circuit requires me to examine: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies. *See Luv N' Care*, 438 F.3d at 473.

Applying these factors here, I do not believe the exercise of personal jurisdiction would be unreasonable or unfair. Neither TC Corp or TCPL have demonstrated that they will be overly burdened by litigating this case in federal court in Texas, especially when TC Corp and TCPL share the same lawyers who

15

represent TC USA in this matter. Heckman lives in Texas, and this state naturally has a strong interest in providing effective means for "redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. All told, there is simply nothing unusual, untoward, or unreasonable about the litigation proceeding here in Texas. Based on the record before me, requiring TC Corp and TCPL to defend this lawsuit in Texas satisfies "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted).

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A.  LEGAL STANDARD

In employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 or the Age Discrimination in Employment Act ("ADEA"), a plaintiff must exhaust all administrative remedies in front of the EEOC before pursuing her claims in federal court. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). The exhaustion of administrative remedies is also a prerequisite to filing an action under the Texas Commission on Human Rights Act ("TCHRA"). *See City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008). Filing an employment discrimination charge with the EEOC has the same effect as filing a charge with the Texas Commission on Human Rights for purposes of administrative exhaustion under the TCHRA. *See Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996).

Administrative exhaustion for state and federal employment discrimination claims "is mandatory (but not jurisdictional), and courts will dismiss claims not properly exhausted." *Wiggins v. Golden Corral Corp.*, 802 F. App'x 812, 814 (5th Cir. 2020) (citation omitted). *See also Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019) ("Title VII's charge-filing requirement is not of jurisdictional cast."). Federal Rule of Civil Procedure 12(b)(6) is, therefore, the proper vehicle to dismiss a complaint for failure to exhaust administrative remedies. *See Larocca v. Alvin Indep. Sch. Dist.*, No. 3:20-CV-00134, 2020 WL 7704512, at *1 n.2 (S.D. Tex. Oct. 28, 2020) (A motion addressing "a Title VII litigant's failure to exhaust their administrative remedies" should brought under Rule 12(b)(6).); *West v. ABM Indus., Inc.,* No. 3:19-CV-02822-X-BT, 2020 WL 5752935, at *4 (N.D. Tex. Aug. 17, 2020) (recommending dismissal of plaintiff's Title VII claim under Rule 12(b)(6) because plaintiff failed to allege exhaustion of administrative remedies).

Rule 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss under Rule 12(b)(6), I must accept all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

TC Corp and TCPL claim that "[u]nlike Title VII and the ADEA, an employee's failure to properly exhaust administrative remedies for a TCHRA claim is considered to be jurisdictional." Dkt. 87 at 13 n.6 (citing *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012)). *Chatha* plainly states that the "failure to adhere to the statutes' mandatory provisions that must be accomplished before filing suit is a jurisdictional bar to suit." 381 S.W.3d at 512. *Chatha*, however, was issued seven years before the Supreme Court's 2019 *Fort Bend County* opinion dramatically altered the landscape in this area of the law. In a 9-0 decision, the highest court in the land concluded in *Fort Bend County* that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." 139 S. Ct. at 1850. There is no good reason why a failure to exhaust administrative remedies in the employment discrimination context would be treated as jurisdictional under state law, but not under federal law—especially given that the Texas Legislature intended to correlate "state law with federal law in the area of discrimination in employment," *Gold v. Exxon Corp.*, 960 S.W.2d 378, 380 (Tex. App.—Houston [14th Dist.] 1998, no pet.), allowing Texas courts to "look to analogous federal cases when applying the TCHRA." *Harris Cnty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 192 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Accordingly, in light of the Supreme Court's *Fort Bend County* decision, I conclude

that the Texas Supreme Court's 2012 *Chatha* decision is no longer good law on the jurisdictional issue.[2] Substantial compliance with the administrative process remains mandatory to bring a claim, but it is no longer jurisdictional in nature. *See Betts v. Winco Foods, LLC*, No. 4:19-CV-00152, 2020 WL 512294, at *3 (E.D. Tex. Jan. 31, 2020) ("Because the TCHRA's requirements are parallel to that of Title VII, the TCHRA's charge-filing requirement, like Title VII, is mandatory, albeit 'not a jurisdictional prescription delineating the adjudicatory authority of courts.'" (quoting *Fort Bend Cty.*, 139 S. Ct. at 1851)).

## B.   ANALYSIS

As a general rule, "a party not named in an EEOC charge may not be sued under Title VII." *EEOC v. Simbaki Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1998)). "When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks." *Id.* at 481. To this end, entities that are not named in an EEOC charge may still face suit if they share an "identity-of-interests" with an employer that was named in the EEOC charge. *See id.* at 484. The Fifth Circuit's identity-of-interests test, commonly referred to as the "*Glus* factors," includes the following four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

---

[2] To date, not a single Texas state appellate court has had the opportunity to consider whether, in the wake of *Fort Bend County*, a failure to exhaust administrative remedies under the TCHRA is still treated as a jurisdictional bar to suit.

2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 482–83 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

Here, Heckman filed her EEOC charge on March 27, 2018. The charge names one entity: TC USA. Nowhere in the six-page document is there any reference to TC Corp or TCPL. Because Heckman failed to name TC Corp and TCPL in her EEOC charge, TC Corp and TCPL argue that her federal and state law discrimination claims must be dismissed. Heckman maintains that there is a clear identity-of-interests between the named party (TC USA) and the unnamed parties (TC Corp and TCPL) such that it is irrelevant that she failed to specifically name TC Corp and TCPL in the EEOC charge.

Viewing the Second Amended Complaint in the light most favorable to Heckman with every reasonable inference in her favor, I conclude that the named party (TC USA) and the unnamed parties (TC Corp and TCPL) may have an "identity-of-interests" under the *Glus* balancing test. With respect to the first *Glus* factor, Heckman argues that she could not have known, despite reasonable efforts, the role of TCPL at the time she filed her EEOC complaint because she did not know that TransCanada's Canadian employees were employed by TCPL until TC

Corp filed a motion to dismiss in this case back in January 2019. As far as the second *Glus* factor is concerned, Heckman argues that it was unnecessary to include TC Corp and TCPL in the EEOC proceedings because their interests are so similar to that of TC USA. In this vein, Heckman points out that federal courts often allow a plaintiff to proceed against a parent corporation when only the subsidiary was identified by name in the EEOC charge. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995) (refusing to dismiss action against a parent company where only the subsidiary was named in the EEOC complaint); *Hill v. Singing Hills Funeral Home, Inc.*, 77 F.R.D. 746, 748–49 (N.D. Tex. 1978) (same). As to the third *Glus* factor, Heckman stresses that TC Corp and TCPL's absence from the EEOC proceedings did not result in actual prejudice to them. Finally, Heckman apparently concedes that the fourth *Glus* factor weighs in TC Corp and TCPL's favor.

Although TC Corp and TCPL argue vehemently that the *Glus* factors actually tip the scale to their side, that is neither here nor there at this stage of the proceedings. Because the *Glus* test is a fact-intensive inquiry, *see Simbaki*, 767 F.3d at 485 n.16, it's inappropriate for me to determine whether the "identity-of-interests" exception might apply at the Rule 12(b)(6) stage. *See Stokes v. Modis*, No. 2:14-06515 (WJM), 2015 WL 3648958, at *1 n.3 (D.N.J. June 11, 2015) ("[D]etermining whether a plaintiff has exhausted his administrative remedies against a defendant that is not named in an EEOC charge is a fact-intensive inquiry, which the Court will not engage in at this time."); *Owens–Presley v. MCD*

*Pizza, Inc.*, No. 14–6002, 2015 WL 569167, at *2 (E.D. Pa. Feb. 10, 2015) ("Application of the *Glus* factors to the affirmative defense of failure to exhaust administrative remedies is a fact-intensive analysis which this Court will not engage in prior to discovery."). Heckman's allegations are sufficient at this early stage. "Whether the identity of interest exception applies requires a more developed factual record than I have before me and is better suited for resolution at summary judgment." *DePaolo v. Ocean Props. Ltd*, No. 2:16-CV-468-NT, 2017 WL 432680, at *3 (D. Me. Jan. 31, 2017).

## CONCLUSION

For the reasons identified above, I **RECOMMEND** that Defendants' Motion to Dismiss (Dkt. 87) be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from receipt to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002—13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 10th day of March 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE